UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

S8 JUL 23 AM 8: 5

N.D. OF ALABAMA

JURL RICE AND ALFA MUTUAL )
INSURANCE COMPANY, )
AS SUBROGEE, )
)
    Plaintiffs, )
)
vs. ) Civil Action No. CV97-S-2395-NE
)
DEERE & COMPANY, )
)
    Defendant. )

ENTERED

JUL 22 1998

## MEMORANDUM OPINION

Plaintiff Jurl Rice is a chicken farmer and the second owner of a John Deere model 2155 tractor manufactured by defendant. He claims that a defect in the tractor caused a fire which resulted not only in the loss of the tractor, but also the destruction of one of his chicken houses and the equipment located therein. Plaintiff Alfa Mutual Insurance Company insured the chicken house and compensated Rice for his losses. Alfa and Rice commenced this action under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), seeking to recover the damages caused by the alleged defect.[1] The action presently is before the court on Deere & Company's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes the motion is due to be granted in part and denied in part.

---

[1] The action was commenced in the Circuit Court for Cullman County, Alabama, but properly removed to this court on the basis of diversity jurisdiction, after plaintiffs' amended their complaint to seek $152,869.88 in damages.

23

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), *Fed.R.Civ.P.* (emphasis added). The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v.*

*Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2512.

With the foregoing standards in mind, this court now will summarize the undisputed facts, or, if disputed shall state them in

3

a manner most favorable to the non-moving parties, plaintiffs Jurl Rice and Alfa Mutual Insurance Company.

### III. FACTS

Plaintiff Jurl Rice operates a chicken farm in Cullman County, Alabama, and is assisted in the operation of that farm by his son, Mitchell Rice. Mitchell Rice ordered a new John Deere Model 2155 tractor from Dowda Farm Equipment Company of Douglasville, Georgia on January 29, 1993. (Mitchell Rice affidavit ¶ 2.) The tractor was delivered to the Rice farm on February 8, 1993. (*Id.* ¶ 3.)

Mitchell Rice sold the machine to his father approximately one year after purchase. (Mitchell Rice affidavit ¶ 5.) Jurl Rice used the tractor to clean eight chicken houses located on his farm. The tractor never left the Rice farm for repairs, and Jurl Rice only performed routine maintenance, such as changing the oil and oil filter. (Jurl Rice deposition at 22, 26.) There is no evidence that anyone removed the guard assembly installed by Deere & Company over the tractor engine, or that anyone ever touched the engine. (Mitchell Rice affidavit ¶ 7.)

Jurl Rice last used the tractor to clean empty chicken houses on November 2, 1995. He parked the tractor inside one of the houses at the end of the day. (Jurl Rice deposition at 28.) At approximately 3:00 a.m. the following morning, Jurl Rice received a telephone call from a passing truck driver, who had observed a fire in the chicken house where the tractor was located. (*Id.* at

4

31.) The chicken house, tractor, and equipment inside the chicken house were destroyed by the fire. (*Id.* at 47-48.)

Jurl Rice notified his property and casualty insurance company, Alfa Mutual Insurance Company, of the loss. Alfa claim adjuster Les Patterson, and, Ralph Newell of Newell Investigative Services, inspected the fire scene on November 12, 1995. Newell is a fire investigator retained by Alfa to determine the cause and origin of the fire. (Newell deposition at 22.) He conducted a four hour investigation, and concluded the fire originated on the right side of tractor's engine (Newell deposition at 52, 59), and that "the cause of the fire was a damaged wire leading to the [tractor's] starter solenoid which caused a short in the engine." (Newell affidavit ¶ 4.) Newell found no evidence that the wire was corroded, or that a rodent may have damaged the wire. (Newell deposition at 73-74; Newell affidavit ¶ 4.) Mr. Newell also testified in deposition that he possessed no evidence, and had no opinion of _when_ or _where_ the wire was damaged:

> Q. Okay. And as whether or not a manufacturing defect existed, you're not going to offer testimony as to that?
>
> A. Well, I may at that because I don't know when this wire became damaged. Manufacturing defect can cover damage during manufacturing. I don't like the word defect period. But manufacturing detect [*sic*] can be a problem caused by an installer in the manufacturing process. So I can't eliminate that happening.
>
> Q. Okay. And also you wouldn't be able to eliminate damage after it left the hands of the manufacturer?
>
> A. At this point, I cannot.

5

Q.   Okay. For instance, in shipping, or while it was at the dealership, which was located in Georgia somewhere?

A.   Yeah, he told me where he bought [it].

Q.   Douglasville, I think.

A.   Douglasville. Through normal service, but I have no records. And I asked Mr. Rice if this thing had been worked on to any extent that would involve that and he said, no. So I don't have any evidence to indicate the dealer would have reason to fool with that part.

Q.   Okay. But as far as when or where this wire was damaged, — and that's your opinion that it was damaged at some point?

A.   Yes.

Q.   — you don't have any evidence as to when that occurred?

A.   No.

Q.   And no opinion as to when that occurred?

A.   No, because no one can tell you when an electrical problem is going to manifest itself.

(Newell deposition at 97-99.)

Defendant's expert witness, Kirk Ney, is a senior engineer at the John Deere Product Engineering Center in Waterloo, Iowa. He provides the following affidavit testimony:

In my work at John Deere, I am personally familiar with the design of the John Deere 2155 tractor that made the basis of the suit styled Jurl Rice and Alfa Mutual Insurance Company v. Deere & Company, Civil Action No. DV-97-64, pending in the Circuit Court for Cullman County, Alabama. This tractor was originally purchased by Mitchell Rice in January of 1993 and bears a Product Identification number of L02155A758997. I personally inspected this John Deere 2155 tractor on January 30, 1996. Based on my inspection of the subject tractor, education, experience and background, the design of the John Deere model 2155 tractor which was purchased by Mitchell Rice was reasonably safe and non-defective.

6

Further, the John Deere model 2155 tractor met all
applicable industry standards in effect a[t] the time it
was designed and manufactured.   Further, model 2155
tractors were inspected at the assembly plant and
underwent numerous quality control procedures and testing
before leaving the control of Deere & Company.

(Ney affidavit at 2.)

## IV. DISCUSSION

In order to establish liability  under the AEMLD, a
plaintiff must prove:

> "(1) He suffered injury or damages to himself
> or his property by one who sells a product in
> a defective condition unreasonably dangerous
> to the plaintiff as the ultimate user or
> consumer, if

> "(a) the seller is engaged in the business of
> selling such a product, and

> "(b) it is expected to and does reach the user
> or consumer without substantial change in the
> condition in which it was sold.

> "(2) Showing these elements, the plaintiff has
> proved a *prima facie* case although

> "(a) the seller has exercised all possible
> care in the preparation and sale of his
> product, and

> "(b) the user or consumer has not bought the
> product from, or entered into any contractual
> relation with, the seller."

*Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132-33
(Ala. 1976).  Furthermore, "[t]he burden of proof rests
with the injured consumer to prove that the product left
the defendant's control in an unreasonably dangerous
condition not fit for its expected use, and that which
rendered the product in such an unfit condition in fact
caused the injury." *Sears, Roebuck & Co. v. Haven Hills
Farm, Inc.*, 395 So. 2d 991, 995 (Ala.1981); citing
Restatement (Second) of Torts, § 402A, cmt. g.

7

*Howell v. Honda Motor Co., Ltd.*, No. 2970208, 1998 WL 151640 (Ala. Civ. App. Apr. 3, 1998)(emphasis supplied).

**A.    Design Defect**

A plaintiff may recover under the AEMLD by establishing that a product suffered from defective design or from a defect created during the manufacturing process of the individual product. *See Brooks v. Colonial Chevrolet-Buick, Inc.*, 579 So. 2d 1328, 1331 (Ala. 1991)("Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purposes and uses"). Deere & Company argues that it is entitled to summary judgment on any design defect claim, because plaintiff can produce no evidence of a safer, more practical, alternative design, as required by the Alabama Supreme Court. *See Beech v. Outboard Marine Corp.*, 584 So. 2d 447 (Ala. 1991). Plaintiffs do not respond to that argument; instead, they attempt to prove that Jurl Rice's tractor suffered from a <u>manufacturing</u> defect. Accordingly, summary judgment is due to be granted to the extent plaintiffs assert a <u>design</u> defect claim.

**B.    Manufacturing Defect**

**1.    Did the tractor suffer from a defect?**

Deere & Company argues that summary judgment is appropriate, because plaintiffs' expert, Ralph Newell, "has <u>not</u> pointed to any specific manufacturing defect in the subject tractor."

8

(Defendant's reply brief at 1 (emphasis in original).)

Nevertheless, it is well established in Alabama that

> proof of the specific defect, *i.e.*, the exact act, omission, process, construction, etc., resulting in the product's failing its intended use, is not required. "If a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to proved defectiveness as a separate matter."

*Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So. 2d 991, 994 (Ala. 1981)(quoting *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 131 (Ala. 1976.). Stated differently, a plaintiff is not required to "prov[e] the specific negligent conduct that ultimately caused a defective condition in a manufacturer's product," but "still must prove the existence of a defective condition and prove that the defect proximately caused his injuries." *Taylor v. General Motors Corp.*, 707 So. 2d 198, 201 (Ala. 1997).

In this action, plaintiffs have presented sufficient proof of a defective condition in the John Deere tractor: *i.e.*, "a damaged wire leading to the starter solenoid which caused a short in the engine." (Newell affidavit ¶ 4.) Even so, plaintiffs still retain the burden of demonstrating that the defect existed when the tractor left the control of defendant Deere & Company.

2.  **Was the tractor defective at the time it left defendant's control?**

The central dispute in this action is whether the John Deere model 2155 tractor suffered from a defect when it "left the

9

defendant's control." *See Howell v. Honda Motor Co., Ltd.*, No. 2970208, 1998 WL 151640 (Ala. Civ. App. Apr. 3, 1998).

> The burden of proving that the product was in a defective condition at the time it left the hand of the seller is upon the plaintiff. Unless evidence can be produced that will support the conclusion that it was defective when it left the hands of the seller, the burden is not sustained.

*Sapp v. Beech Aircraft Corp.*, 564 So. 2d 418, 420 (Ala. 1990)(citations omitted).

Alabama courts have never precisely defined the type of proof a plaintiff must produce to satisfy that burden. Even so, a review of Alabama decisions, reveals a requirement similar to a "chain of custody": *i.e.*, there must be evidence that the product was not tampered with, or altered in any relevant manner, prior to reaching the plaintiff.

For example, the Alabama Supreme Court found that the plaintiff failed to meet its burden of demonstrating a defect in *Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So. 2d 991 (Ala. 1981). In that case, the plaintiff attempted to prove the existence of a defect, based on the fact that a truck tire suffered a blow out after being driven approximately 30,000 miles. The court found that

> [b]lowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects.

*Id.* at 996 (quoting *Shramek v. General Motors Corp.*, 216 N.E. 2d 244, 247 (Ill. App. 1966)). Thus, any number of extraneous

**10**

conditions could have caused the accident in question, and judgment for the defendant was proper.

In contrast, the Alabama Supreme Court held that the plaintiff met her burden in *Interstate Engineering, Inc. v. Burnette*, 474 So. 2d 624 (Ala. 1985), where heat detectors failed to properly activate, resulting in the death of her son. The plaintiff presented evidence establishing that the heat detectors were installed by the manufacturer, and thereafter left undisturbed. The manufacturer did not require that any maintenance be performed on the detectors after installation. Consequently, the court found that the plaintiff had met her burden of demonstrating a defect. The court further found "that the heat detectors' failure of performance is causally related in fact to the product's defective condition at the time of sale." *Id.* at 628.

The Alabama Court of Civil Appeals made a similar finding in *Keelon v. K-Mart*, 481 So. 2d 896 (Ala. Civ. App. 1985). In that action, the plaintiff purchased a fan that caused a fire, which in turn destroyed the plaintiff's home. The plaintiff's expert testified "that the motor of the fan burned internally, *i.e.*, that the fire which occurred in or on the fan began inside the motor, rather than externally." *Id.* at 898. At trial,[2] the defendant argued that the plaintiff could not establish "what happened to the fan between the date of the fire and its delivery to [plaintiff's

---

[2]The defendant in *Keelon* did not present a brief to the Alabama Court of Civil Appeals. Thus, the court was left to speculate on defendant's arguments.

11

expert] approximately six months later." *Id.* The court made the

following finding regarding that break in the chain of custody:

> Due to this "gap" in showing control of the fan,
> defendant could claim that causation in fact was not
> shown. We note, however, that [plaintiff's expert]
> testified that, although he did not know where the fan
> had been prior to its delivery to him, he knew that it
> had not been modified in any way. He based this opinion
> on his inspection of the fan, which revealed that the
> screws had not been loosened or the fan taken apart.
> Such testimony further shows that plaintiff met his
> burden of presenting a scintilla of evidence of causation
> in fact to withstand defendant's motion for a directed
> verdict.

*Id.* at 898-99.

The Alabama Court of Civil Appeals recently declined to

entertain speculation about the timing of a defect in a defendant's

product. In *Allstate Insurance Co. v. Mitsubishi Electronics*

*America, Inc.*, 709 So. 2d 1306 (Ala. Civ. App. 1998), a home was

destroyed by fire, and plaintiffs' expert attributed the fire to an

electrical malfunction in the power cord of a television

manufactured by the defendant. Even so,

> the expert could not state how the injury occurred or
> when the injury occurred, *i.e.*, while in [defendant's]
> control on while in [plaintiff's] control. Without such
> evidence, one could assume that any alleged damage to the
> cord occurred while in [plaintiff's] control.
>
> . . .
>
> [I]n order for [plaintiff] to withstand [defendant's]
> properly supported summary judgment motion, she must
> proffer substantial evidence to indicate that the
> television was in a defective condition when it left the
> seller's control. [Plaintiff] offered no such evidence.
> Instead, [plaintiff] merely speculates that any alleged
> defect in the cord occurred while in the seller's
> control. It is well settled that "[e]vidence that

12

> affords nothing more than mere speculation, conjecture,
> or guess is completely insufficient to warrant the
> submission of a case to the jury." *Smoyer v. Birmingham
> Area Chamber of Commerce*, 517 So. 2d 585, 588
> (Ala.1987).

*Id.* at 1308.  The court thus affirmed summary judgment for the

manufacturer.

Perhaps aware of the foregoing authority, plaintiffs argue

that the tractor's engine was never repaired, serviced, or tampered

with after its manufacture date.

> The tractor was purchased by Mitchell Rice on January 20,
> 1993[,] as a new tractor with all applicable warranties
> available as provided in the Agreement of Purchase.
> [Exhibit C].  The defendant admits in its Answers to
> Interrogatories 5 [Exhibit E] that if any maintenance or
> repair work was performed on this Model 2155 tractor
> after it left the factory and up to the time that the
> distributor Dowda Farm Equipment delivered the tractor on
> February 8, 1993, the defendant would have knowledge of
> such maintenance or repair.  **The defendant states that
> there was no maintenance or repair work performed.**
> [Exhibit E].
>
> After February 8, 1993[,] when the tractor was
> delivered, it did not leave the farm. [Rice depo p. 22;
> Exhibit C]  No one other than the plaintiff Jurl Rice and
> his son Mitchell Rice performed maintenance work on the
> tractor after Dowda Farm Equipment delivered the tractor
> to the Jurl Rice farm on February 8, 1993.  The only
> maintenance work which was performed was changing the oil
> and the oil filter.  The engine wires were not touched or
> modified in any way. [Rice depo p. 26; Exhibit C].

(Brief in opposition to summary judgment at 12 (boldface emphasis

supplied).)

Plaintiffs' argument would be more persuasive if Deere &

Company truly had "state[d] that there was no maintenance or repair

13

work performed." In actuality, defendant's response to interrogatory number 5 is as follows:

> Interrogatory No. 5: State the correct legal name of all persons or entities working on or contracted to work on the tractor by Defendant.

> Response: Deere & Company objects to this Interrogatory as it is vague, ambiguous and unintelligible as phrased. Deere & Company manufactured this tractor at its John Deere Werke Mannheim factory located in the Federal Republic of Germany. Subsequently it was sold by an independent dealer to Mitchell Rice on January 29, 1993. Deere & Company would have no knowledge concerning any maintenance or repair work which was done after its delivery date of February 8, 1993.

(Plaintiff's exhibit E in opposition to summary judgment.) Thus, Deere & Company admits that it would have knowledge of repairs or maintenance which occurred at the "independent dealer[ship]," but neither expressly admits nor denies that "any maintenance or repair work" occurred in the dealer's shop prior to sale. Even so, Deere & Company appears to imply that no maintenance or repair work was performed while the tractor was in the custody of the dealership.

This court thus finds that plaintiffs have presented sufficient evidence to fulfill their "burden of proving that the product was in a defective condition at the time it left the hand of the seller." *Sapp v. Beech Aircraft Corp.*, 564 So. 2d 418, 420 (Ala. 1990). No maintenance was performed on the tractor's engine after it left Deere & Company's control (Jurl Rice deposition at 45; Mitchell Rice affidavit ¶7); Jurl Rice experienced "no problems" with the tractor (Jurl Rice deposition at 45); and, Mitchell Rice avers that no "outside force ... could have altered

**14**

the condition of the tractor after it was delivered" to the Jurl
Rice farm.   (Mitchell Rice affidavit ¶9.)   John Deere model 2155
tractor engines are "protected by metal side screens and a hood
which can be lifted to reveal the engine."   (Newell affidavit ¶ 2.)
Moreover, the wiring leading to the starter solenoid "is encased
within a rubberized coating and in a plastic conduit."   (*Id.* ¶ 3.)
Each of those facts indicates that the wire leading to the starter
solenoid was not tampered with, or damaged, after delivery to the
Jurl Rice farm.   Arguably, therefore, "the defect is traceable to
the Defendant," *Sears, Roebuck & Co., Inc. v. Haven Hills Farm,
Inc.,* 395 So. 2d 991, 995 (Ala. 1981), and summary judgment
accordingly is inappropriate.[3]   An order consistent with this
memorandum opinion will be entered contemporaneously herewith.

DONE this the **23**ʳᵈ day of July, 1998.

_____
United States District Judge

---

[3] Defendant also argues that plaintiffs cannot meet their burden of
demonstrating the tractor reached "the user or consumer without substantial
change in the condition in which it was sold."  Casrell v. Altec Industries, Inc.
335 So. 2d 128, 132-33 (Ala. 1976).  The basis for that argument is the same as
its argument that plaintiffs cannot meet their burden of demonstrating that the
tractor was defective at the time it left defendant's hands:

> In essence, Mr. Newell has admitted that the tractor could
> have been altered from its original manufacture, and that the
> alteration could have caused the fire.  Mr. Newell likewise
> testified that he could not conclusively state whether the tractor
> and the wire in question had been damaged or substantially modified
> after it left Deere & Company.  (Depo. of Newell, p. 97-99).

(Brief in support of summary judgment at 12 (emphasis supplied).)  This court has
found sufficient evidence that the wire was not damaged after it left Deere &
Company, and declines to accept defendant's alternative argument.

15